IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANIELLE SHELLER, et al. | : | |
| | : | Class Action |
| Plaintiffs | : | |
| | : | |
| v. | : | Civil Action |
| | : | No. 11-2371 |
| CITY OF PHILADELPHIA, et al. | : | |
| | : | |
| Defendants. | : | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS, THE CITY OF PHILADELPHIA, OFFICER HATCHER, OFFICER PAEZ, OFFICER CICALE AND OFFICER LINT'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)**

Defendant, The City of Philadelphia, hereby files this Reply Memorandum of law in support of its motion to dismiss. The City of Philadelphia does not concede any arguments raised in its Motion to Dismiss, but replies to address two arguments by Plaintiffs in their Response.

1. Plaintiffs Fail to Meet the Requirements of the Transitory Claims/Relation Back Doctrine Because They Have Failed to Plead Any Named Plaintiff Had A Personal Stake at the Outset of the Litigation, or Any Claim Might Arise Again With Respect to Them.

Plaintiffs claim they meet two exceptions to the standing doctrine in order to bring this action. First, Plaintiffs contend their claims are not moot because the conduct is capable of repetition, yet evades review, citing Murphy v. Hunt, 455 U.S. 478, 482 (1982). Second, Plaintiffs argue that transitory claims, such as those of Plaintiffs here, relate back to establish standing.[1] These arguments ignore a basic premise of the standing doctrine and its exceptions:

---

[1] Although discussed as two separate exceptions by Plaintiffs, Courts generally discuss transitory claims as being remedied by the relation back doctrine, under the same analytical framework. See Lusardi v. Xerox Corp., 975 F.2d 964, 981 (3d Cir. N.J. 1992) (stating, "The Sosna and Gerstein version of the "relation back" doctrine was originally

neither of these arguments will save plaintiffs from the requirement that they still must have a personal stake in the litigation at the time is it *initiated*. Plaintiffs agree with this proposition but entirely miss the point: none of their claims are active *now*. "To permit the certification of a class headed by a 'representative' who did not have a live controversy with the defendant on the day the suit began would be to jettison the last vestiges of the case-or-controversy requirement in class actions." Holmes v. Fisher, 854 F.2d 229, 233 (7th Cir. 1988) (affirming dismissal of civil rights complaint); see also Kauffman v. Dreyfus Fund, Inc., 434 F.2d 727, 734 (3d Cir. 1970), *cert. denied,* 401 U.S. 974 (1971) ("[A] predicate to appellee's right to represent a class is his eligibility to sue in his own right."). The mere fact that the named plaintiffs in this case *used* to have a controversy with the defendant cannot confer a valid, unending procedural claim to represent that class.

The "capable of repetition yet evading review" doctrine is applied in class actions *only where the named plaintiff had a personal stake at the outset of the litigation*, and *where his claim might arise again with respect to him*. See Geraghty, United States Parole Com'n v. Geraghty, 445 U.S. 388 (1980) (emphasis added); cf. City of Los Angeles v. Lyons, 461 U.S. 95 (1983) (holding that the "capable of repetition" doctrine only applies in those exceptional circumstances where a plaintiff can reasonably show that he may again be subject to the alleged illegality). It is the City Defendants' position that *neither* of these reasons apply to Plaintiffs here. There is no personal stake because the grievances have already been reviewed by the Traffic Court, as discussed in City's Motion to Dismiss at Section II.A.1, and any tickets issued in error were

---

designed to ensure that fleeting individual claims not continually preclude class formation, where those claims were "capable of repetition but evading review.").

dismissed.[2] There is no possibility the claim will arise again, because as discussed in City's Motion to Dismiss at Section II.A.1, any vehicle noncompliance with the Motor Vehicle Code was thereafter properly registered.

Plaintiffs cite to a 2003 newspaper article to support the proposition that because 31,000 cars were impounded in the first year of the Live Stop program, the plaintiffs in this lawsuit are likely to be stopped again. See Plaintiffs' Response, n.6. This is a logical fallacy beyond redemption. One could just as easily cite this figure to support the proposition that there were 31,000 unsafe, unlicensed, unregistered drivers who were removed from the streets. Furthermore, claiming discovery is necessary to determine "recidivist" rates of those who have personal problems with insurance, registration, or licensing to determine, "individuals who…may be prone in the future to have similar problems" is contrary to everything Article III stands for. This statement is the very definition of speculative conjecture. Abdul-Akbar v. Watson, 4 F.3d 195, 207 (3d Cir. 1993) ("[C]onjecture as to the likelihood of repetition has no place in the application of this exception and narrow grant of judicial power…speculative hypothesis" regarding whether plaintiff is likely to be incarcerated again is not appropriate in this analysis.); see also Roe v. Operation Rescue, 919 F.2d 857, 864 (3d Cir. 1990) (holding that where "injunctive relief is sought, a plaintiff must demonstrate that he is likely to suffer future injury from the defendant's threatened conduct… 'Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief…if unaccompanied by any continuing, present adverse effects.'").

---

[2] Notably, cases cited by Plaintiffs all have one thing in common: none were previously reviewed by a Court. Here, all Plaintiffs were afforded review of their tickets or citations in Traffic Court. Plaintiffs do not obtain standing simply because they were unsatisfied with that Court's result.

2. <u>The Immobilization and 24 Hour Standard Are a Procedural Aspect of the Statute That Does Not Create a Constitutionally Protected Liberty Interest.</u>

While Plaintiffs correctly observe that state statutes can create a liberty interest that is procedurally protected under the federal Due Process Clause, statutes that merely guarantee procedure do not create such entitlements. See <u>Town of Castle Rock v. Gonzales,</u> 545 U.S. 748, 764 (2005) (entitlement under protection from abuse law to have police seek arrest warrant for abuser "would be an entitlement to nothing but procedure – which we have held inadequate even to support standing,…; much less can it be the basis for a property interest.").

The Second Circuit in addressing this identical, flawed argument, explains that although state laws "may in certain circumstances create a constitutionally protected entitlement to substantive liberty interests,…state statutes do not create federally protected due process entitlements to specific state-mandated procedures." <u>Holcomb v. Lykens</u>, 337 F.3d 217, 224 (2d Cir. 2003) (failure to follow mandated procedure in Vermont Department of Corrections Manual for revoking furlough did not violate procedural Due Process guarantees); <u>see also</u> <u>Doe v. Milwaukee County</u>, 903 F.2d 499, 503-04 (7th Cir. 1990) (rejecting procedural due process claim for failing to investigate child abuse, finding no "entitlement" in such procedures, and ruling the "procedures themselves are not 'benefits' within the meaning of Fourteenth Amendment jurisprudence").  While "[t]he State may choose to require procedures…in making that choice the State does not create an independent substantive right." <u>Olim v. Wakinekona,</u> 461 U.S. 238, 250-51 (1983). To accept Plaintiffs' argument would render meaningless this Court's precedent holding that while state law determines whether a substantive, protected liberty or property interest is at stake, the federal Constitution determines what process is due when that interest is taken away. See <u>Castle Rock</u>, 545 U.S. at 757.

4

The provisions concerning immobilization and towing also do not create an enforceable liberty interest in having one's illegally-possessed car remain on the street because the statute invests authorities with discretion whether to leave a vehicle immobilized or tow it in the interest of public safety.  See id. at 756 (protection from abuse law did not create protected interest because officers have some discretion in determining whether to arrest violators).  Even where a statute contains mandatory language, if that mandatory language does not guarantee a specific benefit, it was not intended to create a right.  See id.  In *Castle Rock*, the Supreme Court found that requiring police to "use every reasonable means, up to and including arrest, to enforce the order's terms," was not a sufficiently specific mandate to create an entitlement to arrest.  Id. at 763.  Similarly here, the statute does not specifically guarantee immobilization, but rather it qualifies that language by allowing officials instead to tow a vehicle "in the interest of public safety." 75 Pa.C.S.A § 6309.2 (a)(2) ("officer shall immobilize the vehicle, or combination, or, in the interest of public safety, direct that the vehicle be towed and stored…").

Plaintiffs incorrectly suggest that the statute creates an entitlement to only have the vehicle towed "where public safety necessitates that action," see Plaintiff's Response at 20. That standard is no less amorphous than the provision in *Castle Rock* mandating that police "use every reasonable means" to enforce a protection from abuse order.  Unlike an arrest, the immobilization provision isn't a protectible interest because there is no way to separate it out from the process designed to protect it.[3]  It is far from the type of mandated entitlement to a specific benefit that creates a protected interest under the Due Process Clause.

---

[3] A two-Justice concurrence in Gonzales adopted this position that an arrest is merely part of the process (as opposed to being a substantive right) and rejected Mrs. Gonzales's claim upon this ground. The two-Justice concurrence adopted the reasoning of the five-Justice majority, and also added this "further reason" that an arrest is part of a process. Gonzales, 125 S. Ct. at 2811 (Souter, J., concurring). A two-Justice dissent disagreed, concluding that Mrs. Gonzales possessed a property interest and that she sought a substantive guarantee, not a process. Gonzales, 125 S. Ct. at 2824 n.20 (Stevens, J., dissenting). The concurrence explained that "[t]here [was] no articulable distinction between the object of Mrs. Gonzales's asserted entitlement and the process she desire[d] in order to protect her

**CONCLUSION**

For all the foregoing reasons, Defendants' Motion to Dismiss should be granted and the Plaintiffs' claims against the Answering Defendants should be dismissed with prejudice.

Respectfully Submitted,

Date: July 27, 2011

*/s/ Amanda C. Shoffel*
AMANDA C. SHOFFEL
Assistant City Solicitor
City of Philadelphia Law Department
Civil Rights Unit
1515 Arch Street, 14th Floor
Philadelphia, PA 19102

---

entitlement: both amount[ed] to certain steps to be taken by the police to protect her family and herself." Gonzales, 125 S. Ct. at 2812. Similarly, this Court should reject Plaintiffs' asserted entitlement as being part of the process itself.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DANIELLE SHELLER, et al.** | : | |
| | : | **Class Action** |
| **Plaintiffs** | : | |
| | : | |
| v. | : | **Civil Action** |
| | : | **No. 11-2371** |
| **CITY OF PHILADELPHIA, et al.** | : | |
| | : | |
| **Defendants.** | : | |

**CERTIFICATE OF SERVICE**

     I hereby certify that on July 27, 2011, the foregoing Defendant's Reply in Support of its Motion to Dismiss Plaintiff's Amended Complaint, and Memorandum of Law, was filed electronically and is available for viewing and downloading from the Court's ECF system and has thus been served on:

        **BRIAN J. MCCORMICK , JR.**
        SHELLER PC
        1528 WALNUT ST., 3RD FL
        PHILADELPHIA, PA 19102

        **KIMBERLY A APONTE ERLICH**
        SHELLER PC
        1528 WALNUT ST 3RD FL
        PHILADELPHIA, PA 19102

        **MATTHEW C. MONROE**
        SHELLER PC
        1528 WALNUT ST 3RD FL
        PHILADELPHIA, PA 19I02

        **DAVID RUDOVSKY**
        KAIRYS RUDOVSKY MESSING & FEINBERG LLP
        THE CAST IRON BLDG STE 501 SOUTH
        718 ARCH STREET
        PHILADELPHIA, PA 19106

        **MICHAEL V. TINARI**
        LEONARD & SCIOLLA, LLP
        1515 MARKET STREET
        SUITE 1800
        PHILADELPHIA, PA 19102

|  |  |
|---|---|
| Date: <u>July 27, 2011</u> | Respectfully Submitted,<br><br>*/s/ Amanda C. Shoffel*<br>AMANDA C. SHOFFEL<br>Assistant City Solicitor<br>City of Philadelphia Law Department<br>Civil Rights Unit<br>1515 Arch Street, 14th Floor<br>Philadelphia, PA 19102 |

8