```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DANIELLE SHELLER, ET AL.,           :
                                    :
                  Plaintiffs,       :    CIVIL ACTION
                                    :
     v.                             :    NO. 11-cv-2371
                                    :
CITY OF PHILADELPHIA, ET AL.,       :
                                    :
                  Defendants.       :
```

**MEMORANDUM & ORDER**

**Joyner, C. J.**                                    **October 2, 2012**

Before this Court are Defendant Philadelphia Parking Authority's Motion to Dismiss (Doc. No. 12), Plaintiffs' Response in opposition thereto (Doc. No. 18), Defendant's Reply in further support thereof (Doc. No. 19), and Plaintiffs' Sur-Reply (Doc. No. 21).  For the reasons set forth in this Memorandum, the Court will grant Defendant's Motion in part and deny it in part.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

This case is a class action dispute over the City of Philadelphia's Live Stop policy.  The Plaintiffs provide factual allegations for four class representatives to highlight their claims, which the Court recounts below.  In each case, the Plaintiffs contend that their vehicle was impounded pursuant to Live Stop despite the availability of "adequate, legal, and safe parking" where the vehicle could have been left immobilized, thus enabling the owner/operator to have a hearing with Traffic Court

1

before towing and storage.

Plaintiff Danielle Sheller was driving her father's vehicle on Friday evening, March 25, 2011.  Ms. Sheller was stopped because of an expired vehicle registration.  While law enforcement officers checked Ms. Sheller's license and the vehicle insurance and registration information, a tow truck arrived at the scene.  Ms. Sheller contacted her father during this incident and he instantly registered the vehicle through the Pennsylvania Department of Transportation ("PennDOT") website.  The officers refused to speak to Mr. Sheller and the Philadelphia Parking Authority ("PPA") towed the vehicle to a PPA impound lot.  The Shellers were unable to obtain a hearing within twenty-four hours because this incident occurred on a Friday evening and Traffic Court is closed on weekends.  Mr. Sheller appeared in Traffic Court on Monday and had to pay a total of $224.80 for towing and storage fees.  Additionally, a Global Positioning System device was allegedly stolen while the vehicle was in the PPA's impound lot.

Plaintiff Earl Johnson was driving to work at approximately 11:45 p.m. on Saturday, February 19, 2011.  Mr. Johnson had a limited license allowing him to drive to and from work only, while at all other times his license was suspended.  Mr. Johnson was pulled over for not using a turn signal.  A tow truck arrived at the scene while law enforcement officers investigated Mr.

Johnson's license, vehicle registration and proof of insurance. The officers informed Mr. Johnson that they would take his vehicle because he had a suspended license.  Mr. Johnson explained that PennDOT permitted him to drive for the limited purpose of travel to and from work; nevertheless, the car was towed.  Mr. Johnson was unable to obtain a hearing in Traffic Court within twenty-four hours because the towing occurred on a Saturday.  Despite the dismissal of his citation by the Traffic Court, Mr. Johnson was required to pay approximately $244.80 in towing and storage fees to retrieve his vehicle.

Plaintiff Brian Walsh was driving his 8-year-old son to the emergency room on Friday evening, March 19, 2010 when he was stopped for having an expired registration.  The PPA towed and impounded Mr. Walsh's vehicle.  Mr. Walsh was unable to obtain a hearing within twenty-four hours since this occurred on a Friday night.  Mr. Walsh had to pay "hundreds of dollars" to the PPA to retrieve his vehicle.

Nicolette Wilson was driving to church on a Sunday morning in November 2009 when she was pulled over.  The law enforcement officer checked her license and vehicle registration and insurance, and then informed Ms. Wilson that her registration had expired a month earlier.  Momentarily, a tow truck arrived and the car was towed and impounded.  Ms. Wilson was required to pay "hundreds of dollars" in towing and storage fees in order to

obtain possession of her vehicle.

Plaintiffs Danielle Sheller and Stephen A. Sheller initially filed a Complaint on March 30, 2011 in the Philadelphia County Court of Common Pleas against the City of Philadelphia, the Philadelphia Police Department ("PPD"), officers of the PPD, Police Commissioner Charles H. Ramsey, and the PPA.  The City and PPD Defendants filed a Notice of Removal on April 5, 2011.  Subsequently, Plaintiffs were granted permission by this Court to file an Amended Complaint.  The Amended Complaint removed Mr. Sheller and added three plaintiffs, all of whom represent a class of vehicle owners or operators "who have had or the [sic] future will have their motor vehicles towed, impounded, and/or searched by the PPD and the PPA in a 'Live Stop' and thereby incur unreasonable fees and penalties" or "who have had or in the future will have their vehicles impounded without an opportunity to appear before a judicial officer within 24 hours as required by statute following a Live Stop."  (Am. Compl. ¶ 85, Doc. No. 11).  Due to an agreement between the City, the PPD Defendants, and the Plaintiffs, the City and PPD Defendants are no longer parties to this action, leaving only the PPA.

Plaintiffs bring this action pursuant to 42 U.S.C. § 1983. Their Complaint alleges that Defendants violated state and federal due process protections by their implementation of the Live Stop policy, which describes the manner in which the PPD

4

implements Pennsylvania Vehicle Code, 75 Pa.C.S. § 6309.2. Allegations against the PPA include violations of the due process guarantees provided by the Fourth and Fourteenth Amendments of the United States Constitution and of Article I, §§ 1, 8, and 9 of the Pennsylvania Constitution. Specifically, Plaintiffs assert that the following actions cause injury to vehicle owners/operators: "(a) unlawful towing and impounding of motor vehicles without an opportunity for a hearing within 24 hours as required by statute, (b) unreasonable searches and seizures..., © towing vehicles without immobilization as required by statute, and (d) imposition of unreasonable towing and impound fees without adequate judicial recourse." (Am. Compl. ¶¶ 95, 115, Doc. No. 11).

The PPA contends that it acts solely as a towing agent under Live Stop and does not make the decision whether a vehicle will be immobilized, towed, or impounded. (Def.'s Br. in Supp. of Mot. to Dismiss, at 11, Doc. No. 12-2). The PPA also contends that it does not determine the conditions for release of an impounded vehicle, such as whether fees must be paid, whether the vehicle owner is entitled to a refund, and whether a vehicle should be released to its owner, as those determinations are left to the Philadelphia Traffic Court. (Id.).

The issues presently before the Court primarily concern (1) whether the PPA causes the deprivation of the motor vehicle by

5

the act of towing and (2) whether the Plaintiff's complaint states a claim against the PPA for constitutional violations in connection with their role in the Live Stop towings.

## II.   STANDARD OF REVIEW

Defendants move to dismiss Plaintiffs' claims under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  In considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a district court must "accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom."  <u>Krantz v. Prudential Invs. Fund Mgmt.</u>, 305 F.3d 140, 142 (3d Cir. 2002) (quoting <u>Nami v. Fauver</u>, 82 F.3d 63, 65 (3d Cir. 1996)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Id.</u>  "Threadbare" recitations of the elements of a claim supported only by "conclusory statements" will not suffice.  <u>Id.</u>  Rather, a plaintiff must allege some facts to raise the allegation above the level of mere speculation.  <u>Great Western Mining & Mineral Co. V. Fox Rothschild LLP</u>, 615 F.3d 159, 176 (3d Cir. 2010)

(citing Twombly, 550 U.S. at 555).  "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  Twombly, 550 U.S. at 563.

### III.  DISCUSSION

#### A.  Live Stop Policy

The Live Stop Policy outlines the manner in which the PPD enforces the Pennsylvania Vehicle Code, 75 Pa.C.S. § 6309.2. (Am. Compl., Ex. A ("PPD Mem."), Doc. No. 11-1).  Under section 6309.2, a motor vehicle shall be immobilized or towed and stored if: (1) the vehicle is operated by an unlicensed person or one whose operating privilege is "suspended, revoked, canceled, recalled or disqualified;" or (2) the vehicle has no registration or its registration has been suspended.  § 6309.2(a)(1), (2). The PPD applies Live Stop by impounding motor vehicles when, during a "lawful vehicle investigation," a law enforcement officer determines that the motor vehicle operator is in violation of any of the above-listed offenses.  (PPD Mem., pt. II).

Upon determination that a vehicle's owner/operator is in violation of one or all of the enumerated offenses, the law enforcement officer is expected to follow specific procedures for towing the vehicle.  (PPD Mem., pt. III).  These procedures include confirming the operator's license and/or vehicle

registration; notifying PPA and Philadelphia Traffic Court; informing the operator of the reason for the tow; preparing traffic citations, investigation and towing reports, and a Towed Vehicle Notice (which provides information on reclaiming the vehicle); and making an arrest if the owner is a scofflaw or has other warrants.  (PPD Mem., pt. III, A).

The final procedural step prior to tow truck arrival allows law enforcement officers to cancel the stop, if authorized by a supervisor, for a priority call or if a tow truck does not arrive within thirty minutes.  (PPD Mem., pt. III, A).  Plaintiffs contend that this particular rule negates any claims that immediate towing without immobilization is necessary for public safety and, as such, this rule undermines the Live Stop practice of impounding all stopped vehicles.  (Am. Compl. ¶¶ 16-17, Doc. No. 11).

Under section 6309.2, procedures differ depending upon whether the vehicle has been immobilized or has been towed and stored.  When a vehicle has been immobilized pursuant to the statute, the vehicle operator "may appear before the appropriate judicial authority within 24 hours of the time the vehicle was immobilized."  § 6309.2(b)(1),(2).  Upon "furnishing proof of registration and financial responsibility," the appropriate judicial authority may authorize the vehicle's release.  Id. Should no certificate of release be authorized within twenty-four

hours of immobilization, the vehicle "shall be towed and stored by the appropriate towing and storage agent." § 6309.2(b)(3).

In contrast, when a vehicle is towed and stored in Philadelphia, the appropriate judicial authority (Philadelphia Traffic Court) or appropriate law enforcement officer "shall notify the appropriate towing and storage agent" (PPA). § 6309.2(c)(2)(I). The PPA then tows and stores the vehicle and provides notice of "the towing, storage and location of the vehicle...to the [vehicle's] owner and [vehicle's] lienholder." § 6309.2(c)(2)(ii). Once a vehicle is towed and stored, the vehicle owner or lienholder may obtain possession of the vehicle by "furnishing proof of valid registration and financial responsibility" and by "paying all fines and costs associated with the towing and storage of the vehicle." § 6309.2(d)(1).

Plaintiffs contend that Live Stop does not provide adequate procedural safeguards to vehicle owners and/or operators because there exists no "policy or procedure to waive or otherwise refund towing or storage fees, even in cases where the Philadelphia Traffic Court has found in the driver and/or vehicle owner's favor." (Am. Compl. ¶ 21, Doc. No. 11). The PPA, relying on the Towed Vehicle Notice form, contends that the PPA is not required to provide such a procedure and that the hearing offered in Philadelphia Traffic Court provides adequate due process. (Def.'s Br. in Supp. of Mot. to Dismiss, at 3, Doc. No. 12-2).

The issue of a refund or waiver of towing and storage fees and costs is not directly addressed by the PPA, as the PPA merely mentions that vehicle owners attend Traffic Court to "arrange for the payment of all fines and costs and to obtain an order for release of the vehicle." (Id. at 4).

With this background on Live Stop, § 6309.2, and the role the PPA plays in these two systems, the Court turns to address the issues in the PPA's Motion to Dismiss.

### B. PPA's Liability for Constitutional Deprivations

The PPA asserts that even if there were constitutional violations, there is no valid cause of action against the PPA because no causal nexus exists between the federal and state constitutional violations and the PPA's alleged conduct. (Def.'s Mot. to Dismiss, at 5-6, Doc. No. 12). In other words, the PPA claims it is not liable for a constitutional deprivation because the PPA does not make the decision to tow and store the vehicle and the PPA is not the proper authority to determine whether a vehicle should be released. (Br. in Supp. of Mot. to Dismiss, at 2-3, 10, Doc. No. 12-2).

Under § 1983, a state actor can be liable for constitutional violations if there is a causal link between the state action and the constitutional violation. See Monell v. New York City Dep't of Soc. Serv., 436 U.S. 658, 692 (1978). The PPA relies upon Mays v. Scranton City Police Dept., 503 F. Supp. 1255 (M.D. Pa.

1980), to contend that a towing agent is not "in a position to provide the procedural avenue by which the vehicle may be released," and therefore cannot be liable for the constitutional violation. 503 F. Supp. at 1264. The court in Mays emphasized that there must be a "causal link" between the state action - in this case, the tower acting under color of state law - and the alleged constitutional violation. Id. In Mays, the alleged constitutional violation was the "failure to afford a hearing prior to the imposition of the lien for towing and storage." Id. Because the towing itself was not the constitutional deprivation and the tower was "not in a position to provide the procedural avenue by which the vehicle may be released," the tower was not liable. Id. According to Mays, a towing agent is "not concerned with the validity of the tow" as that "real controversy is between the city law enforcement agency and the vehicle owner." Id.

There is an important difference between Mays and the case before the Court. The present case challenges not just the hearing, but the constitutionality of the tow itself and the imposition of towing costs. (Pls.' Br. in Opp'n to Mot. to Dismiss, at 14, Doc No. 18). The court in Mays reasoned that the towing agent "merely holds the vehicle and seeks compensation for his services." Mays, 503 F. Supp. At 1264. Therefore, if the basis for the tow proves to be invalid, the towing agent "may

presumably look to the city for remuneration," while if the towing is valid, the vehicle owner would be responsible for towing costs. Id. But here, according to Plaintiffs, owners pay the PPA for towing and storage regardless of whether the towing is invalid and no process exists to receive a refund or waiver of these fees and costs. (Pls.' Br. In Opp'n to Mot. to Dismiss, at 16, Doc. No. 18). Furthermore, Plaintiffs contend that the PPA is solely empowered to remedy the issue of refund and/or waiver of PPA towing and storage fees. (Id.) Such alleged actions by the PPA constitute a causal factor in the due process violations alleged by the Plaintiffs.

The PPA argues that "Plaintiffs' claim that PPA, which acts solely as the towing agent, is somehow responsible for the Traffic Court's alleged failure/inability to refund towing and storage costs" is unfounded and is "more appropriately directed at the legislature or the Traffic Court itself." (Def.'s Reply, at 3, Doc. No. 19). However, as the Court in Addante v. Village of Elmwood Park observed in a similar case addressing a tower's liability for constitutional violations, "[i]f this Court finds a violation of due process the question is not who is best equipped to remedy the violation but rather who caused the violation." 541 F. Supp. 497, 498 (N.D. Ill. 1982). Plaintiffs allege that the PPA causes the deprivation by towing the vehicles with knowledge that PPA's actions "would result in a constitutional

violation," namely the inability to receive a refund or waiver of towing and storage fees.  (Pls.' Br. In Opp'n to Mot. to Dismiss, at 16, Doc. No. 18).   Therefore, as in Addante, the PPA's actions were "an integral part of - and causal factor in - the alleged due process violation."  Addante, 541 F. Supp. at 499.

Even if we accept the act of towing as constitutional, the PPA would be liable for a constitutional deprivation because the act of towing and storing a vehicle while knowing that to do so, as alleged by the Plaintiffs, deprives an owner/operator of the ability to seek a refund or waiver of associated fees and costs. This is particularly so when the towing is determined invalid by Traffic Court.

For these reasons, the Court cannot dismiss all of the claims against the PPA under the PPA's theory that there is no causal nexus to support a constitutional violation by the PPA. Therefore, the Court will turn to the question of whether the Plaintiffs have alleged facts sufficient to support their federal and state constitutional claims against the PPA.

### C. Constitutionality of Towing Itself

The Plaintiffs challenge several aspects of the towing and impoundment as violating their state and federal constitutional rights.  Those alleged acts include the towing of a vehicle without a hearing within twenty-four hours as required by statute, towing vehicles without immobilization first as required

by statute, and the imposition of unreasonable towing and impound fees without adequate judicial recourse. (Am. Compl. ¶¶ 95, 115, Doc. No. 11).

Pennsylvania cases that have considered the towing of vehicles pursuant to section 6309.2 have observed that the City's authority to impound and tow vehicles "may derive from Section 6309.2 as well as from [the City's] community caretaking function." Commonwealth v. Thompson, 999 A.2d 616, 621 (Pa. Super. Ct. 2010). Section 6309.2, in relevant part, states that once a law enforcement officer verifies that a motor vehicle has been operated while the operator is in violation of one of the enumerated offenses, then the officer "shall immobilize the vehicle . . . *or*, in the interest of public safety, direct that the vehicle be towed and stored . . . ." § 6309.2(a) (emphasis added). This language, as written, provides law enforcement officers with the option to tow based on their determination of the interest of public safety. Accordingly, the City's Live Stop Policy allows law enforcement officers to impound and tow all vehicles immobilized pursuant to section 6309.2.

Additionally, "Judges are not in a position to second-guess a police officer's decision to tow a vehicle which, in the officer's opinion, may create a traffic hazard." United States v. Abbott, 584 F. Supp. 442, 448 (W.D. Pa. 1984). The City may have determined that "in the interest of public safety," it would

14

immediately tow and store all vehicles stopped pursuant to Live Stop.  Therefore, the Plaintiffs' allegation that the PPA is liable for the constitutional due process violation of towing without immobilizing first fails to state a claim against the PPA.

Furthermore, Plaintiffs' allegations that the statute requires a hearing within twenty-four hours after towing goes against the plain language of the statute.  Although § 6309.2(b), the portion of the statute addressing procedure upon immobilization, states that once a vehicle is immobilized, the operator may appear before a judicial authority within twenty-four hours, the statute does not contain a similar twenty-four hour period in § 6309.2©, the section addressing procedure upon towing.  Although undoubtedly due process requires a hearing at some point soon after the towing, Plaintiffs' allegation that towing without a hearing within 24 hours violates due process is unfounded as against PPA, the only remaining Defendant.[1]

Based on the above considerations, the towing would not be unconstitutional; however, this does not resolve the issue of the lack of procedural safeguards for releasing a towed and stored vehicle without incurring towing and storage fees and costs,

---

[1] Furthermore, even if the time elapsed between the tow and the hearing did constitute a due process violation, the Court would find no causal nexus between this constitutional violation and the PPA's actions.  The situation would parallel that in Mays, 503 F. Supp. at 1264, and the Court finds the Mays court's analysis, discussed *supra*, regarding that allegation of a constitutional violation persuasive.

especially when the owner or operator is determined to be innocent of any traffic violations.

When a vehicle owner/operator is afforded a process by which to have a hearing on the merits of the citation leading to the vehicle's tow and storage, allowing for release of the vehicle without paying fees until the decision on the merits, courts have found adequate process. See, e.g., Breath v. Cronvich, 729 F.2d 1006, 1011 (5th Cir. 1984); Stypmann v. City and Cnty. of S.F., 557 F.2d 1338, 1344 (9th Cir. 1977).  Under Breath, the court found adequate process in a procedure whereby a vehicle owner/operator could retain possession of his vehicle until a merits hearing could be held "without paying any fees by obtaining an appearance bond."  729 F.2d at 1011.  In this way, should the ticket be deemed meritless, the vehicle owner would be relieved of any fees or costs associated with the towing and storage.  Or, as the court discussed in Mays, the towing agent could "look to the city for remuneration" if the tow proved to be illegal.  Mays, 503 F. Supp. at 1264.  Here, no evidence of any such procedure for obtaining a towed and stored vehicle without paying fees and costs has been presented.  Therefore, the Court cannot grant PPA's Motion to Dismiss in full, because the Plaintiffs have sufficiently stated a claim that they were denied due process when they had to pay the towing and storage fees regardless of whether they had committed traffic violations.

Therefore, the Court denies the PPA Defendant's Motion to Dismiss with respect to the federal and state constitutional due process claims in Counts I, III, VI and VIII of the Complaint. The Court grants the Motion to Dismiss on all the remaining claims.[2]

### IV.   CONCLUSION

For the foregoing reasons, the Court denies Defendant PPA's Motion to dismiss with respect to the federal and state constitutional due process claims in Counts I, III, VI and VIII and grants the Motion with respect to all other claims.  A separate order follows.

---

[2] The claims that the Court dismisses include: federal and state constitutional claims for unreasonable searches and seizures, Count II, Count IV, Count V, and Count VII.  The Plaintiffs have not sufficiently pled a factual basis to state a claim under Iqbal and Twombly that the PPA engaged in unreasonable searches and seizures in violation of the Fourth Amendment.  The Plaintiffs have withdrawn the Equal Protection claim in Count II and the claim under Article III, Section 32 of the Pennsylvania Constitution in Count IV; therefore, the motion with respect to those claims is denied as moot.  As for the Plaintiff's claim that the Live Stop policy violates 75 Pa. C.S.A. § 6309.2 in Count V, the Court concludes that the Plaintiffs have not pled sufficient factual allegations to state a claim that the PPA's participation in the implementation of Live Stop violates the statute.  Instead, these allegations, including that the Plaintiffs were stranded and deprived of their property under the PPD's enforcement of the Live Stop policy, were properly directed at the Defendants that are no longer parties to this lawsuit.  Finally, Count VII contains supplemental state law damage claims against individual defendant police officers; therefore, the claim is dismissed as PPA is the only remaining Defendant.