**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

DANIELLE SHELLER, ET AL.,          :
                                   :
                  Plaintiffs,      :    CIVIL ACTION
                                   :
     v.                            :    NO. 11-cv-2371
                                   :
CITY OF PHILADELPHIA, ET AL.,      :
                                   :
                  Defendants.      :


**MEMORANDUM & ORDER**

**Joyner, C. J.**                                    **January 28, 2013**

     Before this Court are Plaintiffs' Motion for Class
Certification (Doc. No. 33), Defendant Philadelphia Parking
Authority's Response and objections thereto (Doc. No. 36),
Plaintiffs' Reply in further support thereof (Doc. No. 37), and
Defendant's Sur-Reply (Doc. No. 38).  For the reasons set forth
in this Memorandum, the Court will deny the Plaintiffs' Motion
without prejudice.

**I.  BACKGROUND**

     This is a case about the role of the Philadelphia Parking
Authority ("PPA" or "Defendant") in the execution of the City of
Philadelphia's Live Stop policy.  The Plaintiffs' factual
allegations and the background of Live Stop and the PPA's actions
have been fully set forth in the Court's prior Memorandum and
Order on the PPA's Motion to Dismiss.  (Opin. of Oct. 2, 2012,
Doc. No. 29).  The Plaintiffs put forth four individuals as class

1

representatives and set forth factual allegations to highlight their claims. Briefly, each of the Plaintiffs were stopped by members of the Philadelphia Police Department ("PPD") due to alleged violations of Live Stop, including expired vehicle registrations and driving without a proper licence. Plaintiff Danielle Sheller was stopped for driving with an expired vehicle registration, which was renewed during the incident and prior to the towing of her vehicle. Plaintiff Earl Johnson was stopped when he was driving to work with a limited licence that allowed him to drive to and from work only, while at all other times his license was suspended. His car was towed even though he was permitted to drive for the limited purpose of travel to and from work. His citation was dismissed in Traffic Court, but he nevertheless had to pay for towing and storage of his vehicle. Plaintiffs Brian Walsh and Nicolette Wilson were both stopped for expired registrations, and their vehicles were towed and impounded.

Plaintiffs Danielle and Stephen Sheller initially filed a Complaint on March 30, 2011 in the Philadelphia County Court of Common Pleas against the City of Philadelphia, the Philadelphia Police Department ("PPD"), officers of the PPD, Police Commissioner Charles H. Ramsey, and the PPA. The City and PPD Defendants filed a Notice of Removal on April 5, 2011. Subsequently, Plaintiffs were granted permission by this Court to

file an Amended Complaint. The Amended Complaint removed Mr. Sheller and added three plaintiffs as class representatives. Due to an agreement between the City, the PPD Defendants, and the Plaintiffs, the City and PPD Defendants are no longer parties to this action, leaving only the PPA.

Plaintiffs bring this action pursuant to 42 U.S.C. § 1983. Their Complaint alleges that Defendant violated state and federal due process protections with the Live Stop policy, which describes the manner in which the PPD implements Pennsylvania Vehicle Code, 75 Pa.C.S. § 6309.2. The PPA filed a Motion to Dismiss on May 23, 2011, which the Court granted in part and denied in part on October 2, 2012, after the case was removed from a long period of civil suspense while the parties engaged in settlement negotiations. The Court dismissed a number of the Plaintiffs' claims. The only claim against the PPA that the Court did not dismiss was the Plaintiffs' claim that the PPA's towing of vehicles and imposition of towing and storage fees without adequate judicial recourse violates due process under the Pennsylvania and federal constitutions. (Opin. of Oct. 2, 2012, at 14-17, Doc. No. 29).

Plaintiffs have moved for class certification under Federal Rule of Civil Procedure 23 on November 9, 2012. (Pls.' Mot. for Class Cert., Doc. No. 33). The Plaintiffs propose three separate

classes.  The Plaintiffs propose certification under Rule

23(b)(2) for the following class:

> All persons whose vehicles are seized under the Philadelphia
> "Live Stop" Program, who have secured proper registration or
> licensing before towing or storage by PPA, or who have paid
> towing and/or storage fees or costs to the Philadelphia
> Parking Authority, and who are later found not guilty of the
> "Live Stop" charges in proceedings in Philadelphia Traffic
> Court or the Court of Common Pleas, and who are not
> reimbursed for the towing and storage fees or costs as a
> result of the not guilty determination.

(Pls.' Mot. for Class Cert., Doc. No. 33).  The Plaintiffs also

propose certification under Rule 23(b)(3) for two separate

classes.  The first is:

> All persons whose vehicles were seized under the
> Philadelphia "Live Stop" Program on or after April 30, 2009,
> who have paid towing and/or storage fees or costs to the
> Philadelphia Parking Authority, who have been found not
> guilty of the "Live Stop" charges in Philadelphia Traffic
> Court or the Court of Common Pleas, and who have not
> received reimbursement of the towing and storage fees or
> costs following the not guilty determinations.

(Pls.' Mot. for Class Cert., Doc. No. 33).  The second of the

Rule 23(b)(3) classes is:

> All persons whose vehicles were seized under the
> Philadelphia "Live Stop" Program on or after April 30, 2009,
> who had complied with registration and/or licensing
> requirements under Pennsylvania law prior to payment of
> towing and/or storage fees or costs to the Philadelphia
> Parking Authority, but who had no opportunity for an advance
> hearing to determine whether costs are due and owing and/or
> an opportunity to post of a bond pending a hearing in lieu
> of payment of towing and/or storage fees and costs.

(Pls.' Mot. for Class Cert., Doc. No. 33).  The Defendant

responded in opposition on November 30, 2012 (Doc. No. 36), the

Plaintiffs filed a reply on December 11, 2012 (Doc. No. 37), and

the Defendant filed a sur-reply on January 15, 2013 (Doc. No. 38).

## II.  STANDARD OF REVIEW

As this is a motion for class certification, this Court will accept as true the substantive allegations in the Complaint and will not inquire into the merits of the Plaintiffs' claims. Cullen v. Whitman Med. Corp., 188 F.R.D. 226, 228 (E.D. Pa. 1999); Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177-178 (1974).  Hence, the Court will focus exclusively on whether the Plaintiffs have met the burden of proving the requirements as set out in Fed. R. Civ. P. 23 to constitute a class.  Eisen, 417 U.S. at 163.

Fed. R. Civ. P. 23(a) sets forth preliminary requirements that the plaintiff must prove; these requirements "are meant to assure both that class action treatment is necessary and efficient and that it is fair to the absentees under the particular circumstances."  Baby Neal v. Casey, 43 F.3d 48, 55 (3d Cir. 1995).  Rule 23(a) requires four initial elements to be sufficiently proven by the plaintiff in class action certification:  numerosity, commonality, typicality and adequacy. Id. at 55-56.  "If the Rule 23(a) requirements are met, the court must then find that the class fits within one of three categories of class actions set forth in Fed. R. Civ. P. 23(b).  In re Cmty. Bank of N. Virginia, 418 F.3d 277, 302 (3d Cir. 2005).  In this

instance, the Plaintiffs seek certification under both Rule 23(b)(2) and Rule 23(b)(3).

The party seeking certification "bears the burden of establishing each element of Rule 23 by a preponderance of the evidence. <u>Marcus v. BMW of N. Am., LLC</u>, 687 F.3d 583, 591 (3d Cir. 2012). The Third Circuit has repeatedly emphasized that "'[a]ctual, not presumed[,] conformance' with Rule 23 is essential." <u>Id.</u> In deciding whether to certify a class, the court must "make whatever factual and legal inquires are necessary and must consider all relevant evidence and arguments presented by the parties." <u>In re Hydrogen Peroxide Antitrust Litig.</u>, 552 F.3d 305, 307 (3d Cir. 2008).

### III. DISCUSSION

Initially, the Court will take this opportunity to clear up some confusion the parties have shown over the Court's Memorandum and Order on the Defendant's Motion to Dismiss. In their briefings to the Court on this Motion for Class Certification, both parties have made assumptions about the Court's opinion that pervade their respective arguments.

The Plaintiffs seem to have assumed that the Court found conclusively that the PPA's procedures were deficient and decided which procedures were required to comply with due process. Instead, no evidence on the PPA's procedures were before the Court, and the Court merely ruled that the Plaintiffs had stated

a claim.  Without knowledge or proof of the precise procedures in place, the Court cannot say whether these procedures violate due process, or what process would cure such a violation.  Any suggestions otherwise in the Court's opinion were merely digestions of case law or illustrations.

On the other hand, the Defendant appears to argue that the denial of their motion to dismiss on the due process claim was unwarranted and presents arguments, although no evidence, to try to convince the Court that the Plaintiffs' claims are meritless. Such arguments are not appropriate at this time, particularly because neither side has produced evidence with respect to the procedures involved.  The Court cannot decide that the procedures that the PPA refers to, namely, recourse before the Bureau of Administrative Adjudication ("BAA"), is proper without evidence of these procedures properly before the Court.  The parties are free to conduct discovery on these procedures and present evidence of them in a later motion or at trial.

Now, the Court will turn to the issues pertaining to class certification.  First, the Court will address a number of general arguments that the Defendant has presented against class certification.  Following that, the Court will address whether the Plaintiffs have fulfilled their initial burden on demonstrating the requirements under Rule 23(a).  The Court will then address the categories of class actions under Rule 23(b).

**A.  General Arguments Against Certification**

In its memorandum opposing class certification, the PPA
challenges the Plaintiffs' request for class certification on a
number of grounds aside from a failure to conform with Rule 23.
The Court will address these concerns here.

The PPA observes that the Plaintiffs received monetary
compensation from their settlement with the City and PPD
Defendants.  The PPA argues that the Plaintiffs are not entitled
to double recovery and thus class certification is not
appropriate for the damages classes under Rule 23(b)(3).  (Answer
and Objections of Def. to Pls.' Mot. for Class Cert., at 10-11,
Doc. No. 36).  However, the Plaintiffs' claims against the City
were for injuries other than the fees for towing and storage.
Therefore, the Plaintiffs would not receive double recovery if
they received damages from the PPA.

The PPA also argues that the Plaintiffs' motion is untimely,
as Local Rule of Civil Procedure 23.1 requires a party seeking
class certification to move for certification within ninety days
of filing the complaint.  (Answer and Objections of Def. to Pls.'
Mot. for Class Cert., at 11-12, Doc. No. 36).  However, as the
Defendant notes, denial of a class certification motion as
untimely is within the court's discretion.  (Id.); see also
Walton v. Eaton Corp., 563 F.2d 66, 75 n.11 (3d Cir. 1977).
Here, the Plaintiffs filed this Motion for Class Certification

very soon after the Court ruled on the PPA's motion to dismiss. Prior to that time, the parties were involved in settlement negotiations and the case was in civil suspense. Therefore, the failure to comply with the letter of Local Rule 23.1 is excused by the circumstances of this case and the Plaintiffs' swift action in moving for certification once the circumstances were appropriate.

The PPA spends a good amount of space in its brief arguing that class certification should be denied because the PPA already has an appropriate review procedure in place where drivers can go for a refund of towing and storage fees, namely, the BAA. (Answer and Objections of Def. to Pls.' Mot. for Class Cert., at 2-6, 8-10, Doc. No. 36). The Court need not delve into these arguments or whether they are properly presented to the Court in this opposition to Class Certification. Because the Defendant has offered no proof as to the existence of the BAA as a recourse for drivers pulled over under Live Stop or the procedures that the BAA uses, any arguments made as to the adequacy of procedures are unsupported and therefore do not constitute a reason for denying the Plaintiffs' current motion.

Finally, the Defendant presents a number of objections to the Plaintiffs' proposed class definitions themselves. (Answer and Objections of Def. to Pls.' Mot. for Class Cert., at 13-14, Doc. No. 36). Courts in this district have considered whether

the class definition is appropriate before engaging in a Rule 23 analysis.  See Jackson v. SEPTA, 260 F.R.D. 168, 182 (E.D. Pa. 2009).  To be certified, the class must be "sufficiently identified without being overly broad."  Sanneman v. Chrysler Corp., 191 F.R.D. 441, 445 (E.D. Pa. 2000).  The Defendant argues that the class definition is both vague and overly broad.

The Court agrees with the Defendant to a certain extent. The Court finds the definitions of two out of the three classes problematic.  First of all, the Defendant points out that the Rule 23(b)(2) class, unlike the (b)(3) classes, is not limited to a particular time period, and thus includes claims that are barred under the statute of limitations.  Generally, a class may include only members whose claims are not barred by the statute of limitations applicable to their claims.  Lanning v. SEPTA, 176 F.R.D. 132, 148 (E.D. Pa. 1997).  For actions under 28 U.S.C. § 1983, the Third Circuit has held that the state's statute of limitations for personal injury actions applies.  See Montgomery v. DeSimone, 159 F.3d 120, 126 n.4 (3d Cir. 1998).  In Pennsylvania, the statute of limitations for personal injury is two years.  42 Pa. C.S. § 5524.  As the Third Circuit has not, to our knowledge, held that actions for injunctive relief are excepted from this rule, the Plaintiffs' (b)(2) class does include claims that are barred by the statute of limitations.

Second, the definition of what the Plaintiffs call the Rule 23(b)(3) sub-class gives the Court pause. This class includes individuals for whom towing and storage was warranted. For example, a person could have been pulled over for an expired registration on Thursday and had their car towed pursuant to Live Stop. They could have renewed their registration on Friday. Then, they could have sought return of their vehicle and paid the towing and storage fees on Saturday. This person does not fit the scenario that the Court described when it found that the Plaintiffs had stated a claim for a due process violation.[1] And yet this person would be included in the Plaintiffs' second (b)(3) class.[2]

---

[1] This scenario is also distinguished from the one that happened to Plaintiff Danielle Sheller. Ms. Sheller's registration was expired when she was pulled over; however, she was able to quickly renew the registration such that she was no longer in violation when her car was towed. The Court did not address whether the scenario presented in the text or the towing of Ms. Sheller's car was unconstitutional in deciding the Motion to Dismiss, as these issues were not presented by either party; instead the Court addressed only the situation where a driver received a not guilty determination from the Traffic Court.

[2] Indeed, there are a number of scenarios that could be included in the different class definitions that were not specifically ruled on in the motion to dismiss. The three that come to mind are those represented by the named Plaintiffs: (1) Danielle Sheller's situation where there was a violation but the defect was cured before the tow; (2) Earl Johnson's situation where there was no violation, as determined by the Traffic Court, and therefore the tow was unwarranted; and (3) Brian Walsh and Nicolette Wilson's situations where there was a violation and the defect was not cured before the tow. The Court has not yet determined that the PPA's procedures are deficient, or what procedures would be required to comply with due process. Certainly, having sufficient procedures in place would render both warranted and unwarranted towings constitutional. But the Court has not yet determined whether lack of proper procedures would render a warranted towing unconstitutional. These questions and the small but significantly varied factual scenarios make formulating a tailored class definition difficult. The Court need not resolve these questions at this time; instead, the Court raises them here so that the parties are aware of them for the time further motions may be filed in this case.

Additionally, the second Rule 23(b)(3) class assumes a legal conclusion about the process required that the Court has not yet resolved. Specifically, the class refers to people who "had no opportunity for an advance hearing to determine whether costs are due and owing and/or an opportunity to post of a bond pending a hearing in lieu of payment of towing and/or storage fees." (Pls.' Mot. for Class Cert., Doc. No. 33). However, the Court did not hold that these were required for a tow to comply with due process; instead, the Court was recounting procedures other courts have approved for obtaining a towed or stored vehicle without paying fees. (Opin. of Oct. 2, 2012, at 16, Doc. No. 29). Including these requirements in the class definition unnecessarily burdens the definition with legal conclusions.

A problematic class definition does not automatically require the district court to deny class certification; rather, the court may limit or alter the definition to remedy the problem. See Finberg v. Sullivan, 634 F.2d 50, 64 n.9 (3d Cir. 1980) ("The district court should not deny certification on account of such problems without considering the possibility of redefining the classes."); Jackson, 260 F.R.D. at 182-83. However, in light of the other problems with class certification discussed below, the Court will refrain from redefining the classes at this time. Given that the Court would deny class

certification even if the class definitions did not have the problems raised above because of the Plaintiffs' failure to demonstrate numerosity, it is best to allow the Plaintiffs to reformulate the class definitions with the above in mind if they choose to move again for class certification at a later time.

## B.  Rule 23(a)

Federal Rule of Civil Procedure 23(a) sets forth the following prerequisites for certification of a class action:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  These requirements are commonly referred to as numerosity, commonality, typicality and adequacy.  Baby Neal, 43 F.3d at 55.  The Court will analyze each one in turn.

### 1.  Numerosity

"There is no minimum number of members needed for a suit to proceed as a class action."  Marcus, 687 F.3d at 595.  This is so because numerosity is tied to the impracticability of joinder, which depends on the circumstances of the case.  The Third Circuit has found that generally, if a plaintiff demonstrates that the potential number of class members exceeds forty, the

numerosity requirement of Rule 23(a) has been met.  See Stewart
v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001).  The plaintiff
must prove numerosity by a preponderance of the evidence.  In re
Hydrogen Peroxide, 552 F.3d at 307.

To prove numerosity, "[m]ere speculation is insufficient."
Marcus, 687 F.3d at 596.  The Third Circuit recently explained
that although the Rule "does not require a plaintiff to offer
direct evidence of the exact number and identities of the class
members," a plaintiff still must show "sufficient circumstantial
evidence specific to the products, problems, parties, and
geographic areas actually covered by the class definition to
allow a district court to make a factual finding."  Id.  Only
after the plaintiff has offered such evidence can the court "rely
on 'common sense' to forgo precise calculations and exact
numbers."  Id.

In support of their motion for class certification, the
Plaintiffs merely state that the proposed class consists of
people subject to the PPA's policies and practices that are in
dispute, and the "'Live Stop' program involves towing and storage
fees for thousands of persons, and each year a number of those
stopped will be found not guilty of the charges."  (Mem. of Law
in Supp. of Pls.' Mot. for Class Cert., at 5, Doc. No. 33).  In
their reply, they reiterate the same argument, stating: "[g]iven
the pleadings in this case, with thousands of Live Stops that

14

have been and will be conducted in the future, and with hearings
that result in dismissals of some of these charges, the class
must number in the hundreds if not more." (Pls.' Reply Mem. of
Law in Supp. of Mot. for Class Cert., at 6, Doc. No. 37). These
conclusory and speculative arguments are not enough to support
class certification. The Plaintiffs have offered neither direct
nor circumstantial evidence of the number of potential class
members. Therefore, they have not fulfilled their burden to show
that their class fulfills the numerosity requirement of Rule
23(a). As such, the Court must deny the Plaintiffs' Motion, but
will do so without prejudice to allow the Plaintiffs to move
again for class certification at a time when they can demonstrate
the requirements, and cure the other defects mentioned throughout
this opinion.

### 2. Commonality

The commonality requirement of Rule 23(a)(2) "'does not
require identical claims or facts among class member[s].'"
Marcus, 687 F.3d at 597. Commonality is satisfied "if the named
plaintiff shares at least one question of fact or law with the
grievances of the prospective class." Baby Neal, 43 F.3d at 56.

The requirements of Rule 23(a)(2) are easily met here.
Although there may be dissimilarities among the class members,
discussed elsewhere in this opinion, there is surely at least one
common question. The proposed class were all subject to the Live

Stop policy and paid towing and storage fees to PPA without a refund. When the class definition is appropriately tailored, the common inquiry to all will be whether the PPA's refund policy, or lack thereof, complies with due process. Therefore, for a class that meets the definition requirements discussed above, commonality would be satisfied.

### 3. Typicality

Typicality and commonality are closely related and can sometimes merge. Marcus, 687 F.3d at 597. Typicality, however, "derives its independent legal significance from its ability to 'screen out class actions in which the legal or factual position of the representatives is markedly different from that of other members of the class even though common issues of law or fact are present.'" Id. at 598 (quoting 7A Charles Alan Wright, et al., Federal Practice and Procedure § 1764 (3d ed. 2005)). "If a plaintiff's claim arises from the same event, practice or course of conduct that gives rise[] to the claims of the class members, factual differences will not render that claim atypical if it is based on the same legal theory as the claims of the class." Id.

All of the Plaintiffs were subject to the PPA's towing, and the Court has concluded that at least some of them have stated a claim for denial of due process. Therefore, typicality would be fulfilled as long as the class met the definition requirements reiterated above and as long as the class did not include members

16

or representatives whose claims are not cognizable under this Court's opinion on the motion to dismiss.[3]

### 4. Adequacy

Rule 23(a)(4) "tests the qualifications of the counsel to represent the class." In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 800 (3d Cir. 1995). This requirement also "considers whether the named plaintiff's interests are sufficiently aligned with those of the absentee members and serves to uncover conflicts of interest." Jackson, 260 F.R.D. at 192. The Court is satisfied that counsel for the proposed class is sufficiently qualified and the interests of the named plaintiffs are in line with those of a well-defined class tailored to the requirements of Rule 23.

### C. Rule 23(b)

As the Court has determined that the Plaintiffs have failed to fulfill the numerosity prerequisite of Rule 23(a), the Court need not fully delve into whether the Plaintiffs' classes fall into any of the Rule 23(b) categories of class actions. The

---

[3] The Court will take this opportunity to note that two of the four class members may not entirely fit with the group of people with clearly cognizable claims. The facts alleged in the complaint state that Plaintiffs Walsh and Wilson were stopped due to expired registrations, and had to pay towing and storage fees. It does not appear that they cured the defect before their car was towed, or they were found not guilty of their traffic violations. Therefore, their towing would be warranted. The problems with the three different types of Plaintiffs presented here were discussed *supra* in the previous footnote. The Court simply adds here that if Walsh and Wilson do not have cognizable claims, these representatives would be atypical, and therefore would fail the typicality prerequisite. In a future motion for class certification, the Plaintiffs would be well advised to explain why these two plaintiffs have claims that continue to be cognizable.

Court will not pronounce on whether any of the proposed classes, even if more specifically defined, would fit with Rule 23(b), but instead, will use this opportunity to introduce and reiterate a few issues of relevance.

First, a few words with regard to the Rule 23(b)(2) class. Rule 23(b)(2) allows a class action when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). When an action is maintainable under both (b)(2) and (b)(3), it should "be treated under (b)(2) to enjoy its superior res judicata effect and to eliminate the procedural complications of (b)(3)." <u>Kyriazi v. W. Elec. Co.</u>, 647 F.2d 388, 393 (3d Cir. 1981). A suit is maintainable under (b)(2) when the plaintiffs seek damages that are merely incidental to equitable relief. <u>Barabin v. Aramark Corp.</u>, 2003 WL 355417, at *1 (3d Cir. Jan 24, 2003). This subsection "does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages." <u>Hohider v. United Parcel Serv., Inc.</u>, 574 F.3d 169, 198 (3d Cir. 2009) (quoting Fed. R. Civ. P. 23(b)(2) advisory committee's note, 1966 Amendment). The Third Circuit has explained that whether damages are incidental depends on:

> (1) whether such damages are of a kind to which class members would be automatically entitled; (2) whether such

damages can be computed by "objective standards" and not standards reliant upon "the intangible, subjective differences of each class member's circumstances"; and (3) whether such damages would require additional hearings to determine.

<u>Barabin</u>, 2003 WL 355417, at *1 (quoting <u>Allison v. Citgo Petroleum Corp.</u>, 151 F.3d 402, 415 (5th Cir. 1998)).

The Plaintiffs appear to seek to maintain both a (b)(2) and a (b)(3) class. However, consistent with the analysis above, if the entire suit is maintainable under (b)(2), that should be done. If it is not, the Rules allow for certifying the equitable portion under (b)(2) and the damages portion under (b)(3). <u>See</u> Fed. R. Civ. P. 23(c)(4) and 23(c)(5). Given that parties and claims have been dismissed from this suit since the filing of the amended complaint, it would be helpful for the Plaintiffs to clarify the damages they seek from the PPA if the Court is called upon to consider whether to certify a (b)(2) class, a (b)(3) class, or both, in the future.

Now the Court turns to the two proposed (b)(3) classes. Rule 23(b)(3) class actions are appropriate when:

the court finds that questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
    (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
    (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).  The two requirements of Rule 23(b)(3) are generally referred to as predominance and superiority.  The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623 (1997).  Issues common to the class must predominate over individual issues.  In re Prudential Ins. Co. Am. Sales Practice Litig., 148 F.3d 283, 313-14 (3d Cir. 1998).  "Because the 'nature of the evidence that will suffice to resolve a question determines whether the question is common or individual,' 'a district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case.'" In re Hydrogen Peroxide, 552 F.3d at 311 (quoting Blades v. Monsanto Co., 400 F.3d 562, 566 (8th Cir. 2005); In re New Motor Vehicles Can. Exp. Antitrust Litig., 522 F.3d 6, 20 (1st Cir. 2008)).

With respect to both of the Plaintiffs' proposed (b)(3) classes, depending on the procedures the PPA and Traffic Court uses and other facts that will be developed during discovery, there may be more issues that are individual than are common to the class.  For example, if there are number of reasons that a not guilty finding can be made by the Traffic Court, as the

20

Defendants allege, then individual determinations would need to be made to separate those whose citations were valid from those whose citations were not valid.  This, in turn, would determine whether the individuals were entitled to reimbursement of their towing and storage fees.  If it is true, as the Defendants claim, that the Traffic Court finds drivers not guilty for reasons other than erroneous citations, individual plaintiffs might need to submit separate proof as to why they were not guilty in order to show that they deserve reimbursement.  At this point, the Defendants have not shown that not guilty determinations are made for any reasons other than the obvious meaning of the phrase; however, if the Defendants could show this, it would be relevant to a future effort to certify the class.

Similarly, the different fact patterns involved in this case, as represented by the Plaintiffs and described in more detail in the section discussing the class definition, gives the Court pause when considering whether individual issues predominate over those common to the class.  If it turns out that the Plaintiffs seek certification for a number of types of plaintiffs lumped into the same group, individual questions could arise regarding when the different plaintiffs were towed, when they cured the defect, whether there was a defect, and whether the Traffic Court found them not guilty.  The Court merely notes

these reservations so that if the Plaintiffs again seek certification, they can be fully addressed.

To sum up, the Court denies the Plaintiffs' request for class certification without prejudice, as the Plaintiffs have not sufficiently demonstrated the numerosity prerequisite to class certification.  Given the many moving parts in the class definition and the lack of clarity about the procedures the PPA and the Traffic Court use, it might be advisable for the Plaintiffs to refrain from moving again for class certification until these issues have been or are ready to be decided. However, the Plaintiffs are free to move again for class certification whenever they feel they have the evidence and arguments necessary to fulfill the requirements of Rule 23.

## IV.  CONCLUSION

For the foregoing reasons, the Court denies the Plaintiffs' Motion for Class Certification without prejudice.